**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>vs.<br><br>$64,000.00 IN MONEY ORDERS, AND CASHIERS CHECK,<br><br>Defendant. | Case No. 4:07-CV-3691-SWS<br><br>**CLAIMANTS' MOTION TO MITIGATE FORFEITURE** |

## MOTION

The Claimants, SANT MAI and PHUNG LEE, by and through their counsel of record, Richard M. Barnett, Attorney in Charge, and pursuant to Rule G(8)(e) of the Supplemental Rules for Certain Admiralty and Maritime Claims, Title 18, United States Code, Section 983(g) and the Eighth Amendment to the United States Constitution, hereby moves this Honorable Court for an Order mitigating the forfeiture in this case under the Excessive Fines Cause of the Eighth Amendment to the United States Constitution.

This motion is based on the instant motion, the attached Points and Authorities and Exhibits, the records and files in this matter, and any and all other matters which may be brought to the attention of this Court prior to its ruling on this motion.

Dated: June 5, 2009

Respectfully submitted,

s/ Richard M. Barnett

RICHARD M. BARNETT, Esq.
Attorney in Charge
California Bar #65132
105 West F Street, 4th Floor
San Diego, CA 92101
Telephone: (6l9) 231-1182
Facsimile: (619) 233-3221
email: rmb-atty@pacbell.net

Attorney for Claimants
SANT MAI and PHUNG LEE

**MEMORANDUM OF POINTS AND AUTHORITIES**

**STATEMENT OF THE CASE**

On September 5, 2007, the defendant $64,000 in money orders and cashier's check was seized by United States Customs Agents at the George Bush Intercontinental Airport, Houston, Texas. On November 1, 2007, plaintiff filed its Verified Complaint for Forfeiture In Rem. On November 29, 2007 and December 5, 2007, claimants Phung Lee and Sant Mai filed their respective Claim(s) Opposing Forfeiture. On December 18, 2007, the claimants filed their Answer(s) to Complaint for Forfeiture and Demand for Jury Trial. On April 10, 2008, the parties appeared before this Court for the Rule 16 Scheduling Conference and on that date executed a consent to proceed before Magistrate Judge. On April 21, 2008, the matter was ordered reassigned to this Court by the Honorable David Hittner, United States District Judge. On May 5, 2009, the parties entered into an agreed Motion for Forfeiture Judgment, and on May 7, 2009, the parties motion was granted. The judgment provided that fifty (50) percent of the defendant $64,000 in money orders and cashier's check would be forfeited to the United States while fifty (50) percent of the defendant money orders and cashier's check would be returned to claimants. That Order further provided that the claimants reserved their right to move for Mitigation of Forfeiture under the Excessive Fines Clause of the Eighth Amendment of the United States Constitution pursuant to Rule G(8)(e) of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions.

**STATEMENT OF THE FACTS**

On September 5, 2007, claimants Sant Mai and Phung Lee returned to the United States with approximately $49,000.00 in money orders which they had purchased here in the United States and taken to Panama. In addition, Mr. Mai returned with a Wells Fargo Bank cashier's check in the amount of $15,000.00 which had been purchased here in the United States and forwarded to Panama, but returned because the payee's name was misspelled.

**INTRODUCTION**

It is generally accepted that the failure to declare currency and/or monetary instruments (as defined in Title 31 of the Code of Federal Rule of Regulations) subjects the property to

forfeiture. Nevertheless, the United States Customs Service's own publications on the subject fail to list money orders as "monetary instruments" which must be declared upon exit or entry into the United States. In that regard, in a publication entitled "Do I have to declare currency when entering the U.S. in-transit to a foreign destination?" on the United States Customs' website, the following instructions are given to travelers:

> **"Do I have to declare currency when entering the U.S. in-transit to a foreign destination?"**
>
> **Question**
>
> "Do I have to declare currency when entering the U.S. in transit to a foreign destination?"
>
> **Answer**
>
> "When entering the U.S. in-transit to a foreign destination, you will be required to clear U.S. Customs Border Protection and Immigration Customs Enforcement. If you have "monetary instruments" (i.e. currency, personal checks, travelers checks, gold coins, securities or stocks in bearer form) valued at $10,000.00 or more in your possession a "Report of International Transportation of Currency or Monetary Instruments" form FinCEN 105 must be submitted to a CBP officer upon your entry into the United States . . . (See Exhibit "A".)

An additional section entitled "Traveling with money, checks, etc., do I have to pay duty?" states the following:

> **"Traveling with money, checks, etc., do I have to pay duty?"**
>
> **Question**
>
> "Traveling with money, checks, etc., do I have to pay duty?"
>
> **Answer**
>
> "Customs does not collect duty on currency. However, travelers leaving or entering the United States are required to report monetary instruments (i.e. currency or checks) valued at $10,000 or more and file "Report of International Transportation of Currency or Monetary Instruments" form FinCen 105. . ." (See Exhibit "B".)

Thus, the U.S. Customs Services' own publications fail to warn travelers they are required to declare money orders upon exit or entry into the United States.

Additionally, as briefly addressed above, the facts regarding the cashier's check are as follows: Mr. Mai had retained the services of an attorney by the name of Francisco Lambrano-

Borrero in Panama in connection with a business venture described below. He forwarded the cashier's check to the lawyer prior to his trip to Panama. Upon his arrival, he learned the lawyer was unable to cash the check because his name was misspelled on the check. Mr. Mai then brought the check back to the United States.

**ARGUMENT**

**I**

**THE FORFEITURE OF THE ENTIRE RES CONSTITUTES AN EXCESSIVE FINE**

Rule G(8)(e) of the Supplemental Rules for Certain Admiralty and Maritime Claims reads in relevant part:

> (e) Excessive Fines.
>
> A claimant may seek to mitigate a forfeiture under the Excessive Fines Clause of the Eighth Amendment by motion for summary judgment or by motion made after entry of a forfeiture judgment if:
>
> (i) the claimant has pleaded the defense under Rule 8; and
>
> (ii) the parties have had the opportunity to conduct civil discovery on the defense.

It is undisputed claimants both pled the defense of excessive fines in their respective answers (See Third Affirmative Defense in Answer[s] of Sant Mai and Phung Lee, at pg. 2, lines 20-23 respectively.) Additionally, the parties were afforded the opportunity to conduct civil discovery in the case. (See Scheduling Order, filed 4-17-08, at item # 4.)

The seminal case for the evaluation of the legality of a forfeiture in light of the Excessive Fines Clause of the Eighth Amendment to the United States Constitution is United States v. Bajakajian, 524 U.S. 321 (1998). Although that case was a criminal forfeiture, the Supreme Court has held that both civil and criminal forfeitures are punishment for the purposes of applying the Excessive Fines Clause. Austin v. United States, 509 U.S. 602, 621-22 (1993). Other courts have also applied Bajakajian to civil forfeitures. See, e.g., United States v. $273,969.04 in United States Currency, 164 F.3d 462, 466 (9th Cir. 1999).

In Bajakajian, the government sought criminal forfeiture under 31 USC § 5317 of $357,144.00 that Bajakajian failed to report when leaving the country. Bajakajian pled guilty to

failing to report currency in violation of 31 USC § 5316, the underlying statute relied upon in the government's complaint. Id. at 324-25. At a bench trial on the government's claim that criminal forfeiture was appropriate, the district court found that imposition of a complete forfeiture would be "extraordinarily harsh" and "grossly disproportionate to the offense in question," and it would, therefore, violate the Excessive Fines Clause. The district court ordered forfeiture of $15,000.00, and imposed a sentence of 3 years probation with a fine of $5,000.00. The Ninth Circuit affirmed the district court's ruling.

The Supreme Court agreed with both the district court and the court of appeals holdings that forfeiting all of the money would violate the Excessive Fines Clause — it would "be grossly disproportional to the gravity of his offense." Id. at 324. The Court went on to establish four factors to be analyzed in determining the appropriateness of a forfeiture, which have come to be known as the "Bajakajian Factors," which are:

(1) The essence of the crime of the respondent and its relation to other criminal activity;

(2) Whether the respondent fits into the class of persons for whom the statute was designed;

(3) The maximum sentence and fines that could have been imposed; and

(4) The nature of the harm caused by the respondent's conduct. Id. at 337-39, 338 n.13.

The Bajakajian Court concluded that seizing the entire amount of money would be grossly disproportional to the crime of failing to report the money because:

(1) The respondent's crime was "failing to report the wholly legal act of transporting his currency" and that it was legal for him to be in possession of the currency;

(2) His violation was unrelated to any other illegal activity and the currency was not the proceeds of illegal activity;

(3) He did not fit into the class of persons for whom the statute was designed, i.e., a money launderer, a drug trafficker, or tax evader;

(4) His maximum length of imprisonment was six months and his maximum fine was

$5,000.00 under the Sentencing Guidelines, which confirmed a minimum level of culpability; and

(5) The harm he caused was minimal because his failure to report the currency affected only the government and in a relatively minor way because the government was deprived "only of the information [that money] had left the country." Id. at 37-39.

After Bajakajian, 18 USC § 983 was enacted as part of the Civil Asset Forfeiture Reform Act of 2000 (CAFRA). Section 983(g) essentially codifies the holding of Bajakajian: "[T]he court shall compare the forfeiture to the gravity of the offense giving rise to the forfeiture," to determine whether the forfeiture is constitutionally excessive. This section also sets out the procedures to be utilized in civil forfeitures such as that involved in this case. Moreover, Rule G(3)(e) of the Supplemental Rules for Certain Admiralty and Maritime Claims, which applies to this case, authorizes a claimant to seek to mitigate a forfeiture under the Excessive Fines Clause by either a motion for summary judgment, or by a motion made after entry of a forfeiture judgment, provided the claimant has pleaded the defense under Rule 8, and the parties have had the opportunity to conduct civil discovery on the defense.

In this case, as set forth above, the analysis of the Bajakajian factors compels the conclusion that the appropriate forfeiture to be levied here is no more than $5,000.00. Although the maximum penalty for a violation of 31 USC § 5316 is five years in prison and a $250,000 fine, Bajakajian, itself, strongly suggests that the appropriate measure of the sentence and fines that could have been imposed in evaluating Factor (3) is that resulting from an application of the Sentencing Guidelines. Bajakajian, 524 U.S. at 349 n.14 ("That the maximum fine and Guideline sentence to which respondent was subject were but a fraction of the penalties authorized, however, undercuts any argument based solely on the statute, because they show that respondent's culpability relative to other potential violators of the reporting provision — tax evaders, drug kingpins, or money launderers, for example — is small indeed." ). Here, the application of Guideline § 2S1.3 for claimants would have been 0 to 6 months in custody, with a fine range under § 5E1.2(c) (3) of $500 to $5,000.00. Accord, United States v. 817 N.E. 29

Drive, Wilton Manors, Florida, 175 F.3d 1304, 1310 (11th Cir. 1999); United States v. Beras, 183 F.3d 22, 29 n.5 (1st Cir. 1999)(noting that Bajakajian "suggests that the maximum penalties provided under the Guidelines should be given greater weight than the statute because the Guidelines take into consideration the culpability of the individual defendant.").

Here, the application of each of the Bajakajian Factors supports the result advocated by claimants:

(1) Their "crime" consisted only in failing to report the monetary instruments in their possession, none of which were currency, and it was legal for them to be in possession of these monetary instruments;

(2) Their violation was unrelated to any other illegal activity, and the monetary instruments were not the proceeds of illegal activity;

(3) They do not fit into the class of persons for whom the statute was designed, i.e., a money launderer, drug trafficker, or tax evader;

(4) The maximum length of imprisonment is six months and maximum fine is $5,000.00 under the Sentencing Guidelines, which confirms a minimal level of culpability; and

(5) The harm they caused was minimal because their failure to report the monetary instruments affected only the government in a relatively minor way because it was deprived only of the information that money which had originated in this country was returned to this country in the form of money orders and a cashier's check.

Notably, this case does not involve a violation of 31 USC § 5332, commonly referred to as the Bulk Cash Smuggling Statute, enacted in October, 2001, as part of the USA Patriot Act. Cases which have upheld greater proportional penalties than that advocated here overwhelmingly involved violations of that statute, rather than §5316, as here. See, e.g., United States of America v.Otilio Jose, 499 F.3d 105, 114 (1st Cir. 2007); United States v. $100,348.00 in U.S. Currency, 354 F.3d 1110, 1123 (9th Cir. 2003); United States v. $293,316.00 in United States Currency, 349 F.Supp. 2d 638, 651 (E.D.N.Y. 2004) (Hon. Jack B. Weinstein).

Having discussed this matter at length with the government it is anticipated it will rely on authority which is clearly distinguishable from the instant case. In United States v. Wallace, 389

F3d 483 (5th Cir. 2004), the government sought forfeiture of the defendant's airplane, valued at $30,000, as a consequence of his guilty plea to count 1 of the indictment, which charged him with knowingly and willfully operating an unregistered aircraft in violation of 49 USC § 46306(b)(5)(A). The criminal case and criminal forfeiture arose out of Mr. Wallace's arrest by local authorities after he arrived at the Springhill, Louisiana airport in his Cessna airplane. At the time, he was under investigation by U.S. Customs Service Agents who were investigating him on suspicion of transporting illegal drugs. Because no evidence of drug trafficking was found, the government filed a federal criminal case against Wallace which was resolved by his guilty plea, resulting in a sentence of one year unsupervised probation and a special assessment of $100. Following a bench trial on the forfeiture count of the indictment, the district court upheld the forfeiture of the entire airplane, which was affirmed by the Fifth Circuit. Significantly, in that case, there was no guideline range in existence at the time of the commission of the criminal offense. Id. at 486. Even though the court in that case quoted from the language of Bajakajian which you have excerpted that the forfeiture of the $30,000 airplane was certainly "not grossly disproportionate" to the $250,000 statutory maximum fine, it went on to analyze the issue using as a bench mark the original $15,000 statutory maximum fine in existence under the predecessor statute, which it used for guidance. The court there noted that even using the previous $15,000 statutory maximum under the predecessor statute, the $30,000 forfeiture differed from that maximum fine by only a factor of two. The court noted that the $357,000 forfeiture sought by the government in Bajakajian by contrast, was "over seventy times of $5,000 under the Sentencing Guidelines." Id. at 486-487. In our case, on the other hand, the forfeiture of the entire $64,000 at issue would result in a forfeiture 12.8 times greater than the $5,000 maximum guideline fine. Perhaps more importantly, the Wallace Court noted that the gravity of the offense giving rise to the forfeiture was greater than that analyzed by the Supreme Court in *Bajakajian*. In the case before it, Wallace had owned the airplane for seven years without re-registering it in his name, even though he had owned four other airplanes and had registered all of them. The court there also noted the most recent registration certificate on file for the airplane at issue, showing its registration to the Arkansas Forestry Commission, "increased the damage to the

integrity of Federal Aviation Safety and Security Systems caused by [his] operation of an unregistered airplane", as airplanes registered to governmental agencies are permitted to engage in low-level flight, below radar coverage, without attracting a law enforcement response as these agencies conduct low-level flights for research and survey purposes. These suspicious circumstances, suggesting Wallace's involvement in drug trafficking, coupled with an analysis of the Congressional record indicating the draftsmen of this legislation sought to give law enforcement agencies the authority to seize aircraft operated in violation of the statute "whether control substances are involved or not," contributed to the Fifth Circuit's conclusion that the forfeiture at issue there was not violative of the Excessive Fines Clause. Moreover, the Eleventh Circuit case quoted in Wallace, United States v. 817 N.E. 29th Drive, gave much greater weight to the permissible range of fines under the sentencing guidelines than that accorded to the general statutory maximum of $250,000. Id. 486.

The other case it is anticipated the govenremtn will rely on is United States v. Bernitt, 392 F.3d 873 (7th Cir. 2004) is even more dissimilar to the facts underlying this case. There, the government sought forfeiture of the defendant's property, valued at $115,500, where the defendant was convicted of cultivating 110 marijuana plants ranging in height from 2 to 8 feet growing alongside his house; 248 well tended marijuana plants in his garden; and 281 marijuana plants found in a wooded area of the 30 acre property as well. Clearly, Mr. Bernitt, who was sentenced to the minimum mandatory 5 year penalty for his offenses, was the type of offender for whom the forfeiture provisions were designed--the operator of a large scale cultivation of marijuana for financial gain operation. Moreover, even though the Bernitt Court made reference only to the statutory maximum fine of up to 2 million dollars applicable to the defendant's convictions, the November, 2001, Sentencing Guidelines applicable to Bernitt's offenses provided for a guideline fine range of between $12,500 to $125,000 under section 5E 1.2(c)(3) of those guidelines. Thus, the amount of the forfeiture upheld by the 7th Circuit in that case was less then the maximum guideline fine, as well as the statutory maximum. These circumstances serve to clearly distinguish that case from this one, and clearly suggest that our position is more legally tenable than that which the government is expected to advance.

For all of the foregoing reasons, the appropriate penalty to be imposed upon claimants in this case should be between $500 and $5,000.00.

Dated: June 5, 2009

Respectfully submitted,

s/ Richard M. Barnett

RICHARD M. BARNETT, Esq.
Attorney in Charge
California Bar #65132
105 West F Street, 4th Floor
San Diego, CA 92101
Telephone: (6l9) 231-1182
Facsimile: (619) 233-3221
email: rmb-atty@pacbell.net

Attorney for Claimants
SANT MAI and PHUNG LEE

**CERTIFICATE OF SERVICE**

I, RICHARD M. BARNETT, do hereby state:

That I am a citizen of the United States, over the age of eighteen years, and not a party to the within action.

That my business address is 105 West F Street, 4th Floor, San Diego, California.

That on June 5, 2009, I have caused service of Claimants' Motion to Mitigate Forfeiture on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies said party:

Albert Ratliff, Assistant U.S. Attorney, Attorney for Plaintiff.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 4th day of June, 2008, at San Diego, California.

s/ Richard M. Barnett
RICHARD M. BARNETT