1

2          **UNITED STATES DISTRICT COURT**

3           **SOUTHERN DISTRICT OF TEXAS**

4                **HOUSTON DIVISION**

5

6    UNITED STATES OF AMERICA,        )        Case No. 4:07-CV-03691-SWS
                                      )
7                    Plaintiff,       )        **CLAIMANTS' REPLY TO UNITED**
                                      )        **STATES RESPONSE IN OPPOSITION**
8        vs.                          )        **TO CLAIMANTS' MOTION TO**
                                      )        **MITIGATE FORFEITURE**
9    $64,000.00 IN MONEY ORDERS,      )
     AND CASHIERS CHECK,              )
10                                    )
                     Defendant.       )
11   _____)

12          Claimants hereby submit their reply to the United States' Response in Opposition to

13   Claimants' Motion to Mitigate Forfeiture (hereinafter "Response").

14                          **INTRODUCTION**

15          In its response to claimants' motion to mitigate forfeiture (Doc. # 26), the government

16   maintains that during a Customs inspection of claimants  upon their arrival to George Bush

17   Intercontinental Airport in Houston on September 5, 2007, Customs officers found that both

18   claimant Sant Mai and Vu Hoang were carrying "approximately $64,000.00 in cash and money

19   orders." (Response, p.2).  In reality, as the Verified Complaint for Forfeiture In Rem (Doc. # 1)

20   indicates, claimant Sant Mai was found to be in possession of $15,000.00 in money orders, and a

21   cashiers check issued by Wells Fargo Bank in the amount of $15,000.00. (Complaint, p.6).  Vu

22   Hoang, who accompanied him, but is not a claimant,  was found to be in possession of

23   $34,000.00 in money orders. (Complaint, p.7).  Thus, the $64,000.00 which is the subject of the

24   instant forfeiture action did not include any cash, but rather consisted exclusively of money

25   orders and one cashiers check as the caption of the complaint indicates. (Complaint, p. 1).

26   Further, as the complaint states, Mr. Hoang told the Customs agents that all of the money orders

27   which he was carrying belonged to Mr. Mai.  (Complaint, p.7).  For this reason, Mr. Hoang

28   believed that it was Mr. Mai's obligation to declare these monetary instruments.  Moreover, as

                                        1

1   pointed out in Claimants' Points and Authorities in Support of Motion to Mitigate Forfeiture

2   (hereinafter "Motion"), nothing in the United States Customs Service's own publications

3   relating to what must be declared indicates that money orders are considered to be "monetary

4   instruments" which must be declared upon exit or entry into the United States.  (Motion, pp. 2-3).

5                                         **ARGUMENT**

6                                              **I**

7   **THE PROVISIONS OF THE BULK CASH SMUGGLING STATUTE, 31 U.S. C. § 5332,**
    **HAVE NO APPLICATION TO THE INSTANT FORFEITURE.**

8

9        In its argument, the government initially asserts that claimants committed a serious felony

10  violation.  In support of this assertion, it points to the Congressional findings accompanying the

11  passage of the Bulk Cash Smuggling Statute, 31 USC **§** 5332.  Those findings assert that the

12  smuggling of large quantities of currency in bulk form is the most common form of money

13  laundering, and constitutes a reliable warning sign of "drug trafficking, terrorism, money

14  laundering, racketeering, tax evasion and similar crimes."  However, since the instant case does

15  not involve the smuggling of any cash whatsoever, neither the Bulk Cash Smuggling Statute nor

16  the Congressional findings which accompanied its enactment, are relevant here.  Rather, the

17  evidence in this case discloses that all $49,000.00 in money orders which are the subject of this

18  forfeiture action were purchased here in the United States, taken to Panama, and returned to the

19  United States when the business venture for which they were intended was not carried out.

20  Similarly, the $15, 000.00 Wells Fargo Bank cashiers check was also acquired here in the United

21  States, and taken to Panama.  However, it, too, was returned to the United States in the

22  possession of Mr. Mai because the payee's name on the check was misspelled.  Accordingly, as

23  the government concedes (Response, p. 5), "there is no evidence that this offense is related to

24  another crime…."

25                                              **II**

26  **THE FORFEITURE SOUGHT TO BE IMPOSED HERE CONSTITUTES AN**
    **EXCESSIVE FINE IN VIOLATION OF THE EIGHTH AMENDMENT**.

27        In United States v. Bajakajian, 524 U.S. 321 (1998), the Supreme Court devised the

28

1  analytical framework for determining whether a punitive forfeiture is unconstitutionally

2  excessive.  "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the

3  principle of proportionality…."  Id. At 334.  "[The] courts of appeals, reviewing the

4  proportionality determination de novo, must compare the amount of the forfeiture to the gravity

5  of the defendant's offense.  If the amount of the forfeiture is grossly disproportional to the gravity

6  of the defendant's offense, it is unconstitutional. Id. At 336-37.

7        Here, the claimants' offense is less serious then that analyzed by the Bajakajian Court.  In

8  that case, the respondent's crime was "failing to report the wholly legal act of transporting his

9  currency" which it was legal for him to possess.  His violation was unrelated to any other illegal

10  activity and the currency was not the proceeds of illegal activity; he did not fit into the class of

11  persons for whom the statute was designed, i.e., a money launderer, a drug trafficker, or tax

12  evader; and the harm which he caused was minimal because his failure to report the currency

13  affected only the government and in a relatively minor way because the government was

14  deprived "only of the information [that money] had left the country."  Id. At 337-39.

15        In the case before the Court, not only do all of the foregoing observations of the

16  Bajakajian Court apply, but the money orders and cashiers check were obtained in the United

17  States, taken abroad, and then returned to this country.  Thus, the claimants' offense in this case

18  was even less serious than that evaluated by the Bajakajian Court.

19        The government cites United States v. 187 NE 29th Dr., Wilton Manors, Fla., 175 F. 3d

20  1304, 1309-1310 (11th Cir. 1999), in support of its contention that "if the value of the forfeited

21  property is within the range of fines prescribed by Congress, a strong presumption arises that the

22  forfeiture is constitutional," and "if the value of the property is within or near the permissible

23  range of fines under the sentencing guidelines, the forfeiture almost certainly is not excessive."

24  (Response, pp. 5-6).  However, Bajakajian, itself, strongly suggests that the appropriate measure

25  of the sentence and fines that could have been imposed for purposes of evaluating excessiveness

26  is that resulting from an application of the sentencing guidelines.  Bajakajian, 524 U.S. at 349 n.

27  14 ("that the maximum fine and guideline sentence to which respondent was subject were but a

28  fraction of the penalties authorized, however,  undercuts any argument based solely on the

1  statute, because they show that respondent's culpability relative to other potential violators of the

2  reporting provision… is small indeed.").  Since the government agrees that the maximum

3  guideline fine in this case is $5,000.00 under Guideline section 5E1.2(c) (3) (Response, p. 6,

4  n.2), that amount is the true guidepost against which the forfeiture sought to be imposed here

5  should be measured.

6       The Fifth Circuit case of United States v. Wallace, 389 F.3d 483, 486 (5th Cir. 2004),  is

7  not to the contrary.  In that case (discussed at length in claimants' motion, pp. 7-8), there was no

8  guideline range in existence at the time of the commission of the criminal offense at issue there,

9  operation of an unregistered aircraft in violation of 49 U.S.C. § 46306(b).  Id. at 486.  Even so,

10 the Wallace Court went on to analyze whether the $30,000.00 forfeiture imposed in that case was

11 excessive, using as a guidepost the previous $15,000.00 statutory maximum under the

12 predecessor statute in determining that the $30,000.00 forfeiture in that case was constitutional.

13 Id. At 486-487.  Most importantly, however, the court in Wallace found the gravity of the offense

14 there to be far greater than that analyzed in Bajakajian.  Even though not charged, the

15 circumstances surrounding the commission of the offense upon which forfeiture was predicated

16 strongly suggested Wallace's involvement in drug trafficking.

17      The government then attempts to manipulate the numbers involved in order to attempt to

18 justify the forfeiture.  Even though the evidence is clear that  Vu Hoang was a mere bailee for

19 claimant Sant Mai, who justifiably relied upon Mr. Mai to declare the money orders which

20 Hoang was carrying for him, the government contends that the applicable guideline maximum

21 fine for excessiveness is $10,000.00 (5,000.00 as to each "claimant") rather than $5,000.00.

22 Given the circumstances set forth above, this position is not supported by the evidence.  In a

23 further attempt to manipulate the numbers in order to achieve the desired result, the government

24 also maintains that the actual amount of the forfeiture to be evaluated for excessiveness is

25 $32,000,00, the agreed upon settlement amount, rather than $64,000.00, the amount of the

26 forfeiture initially sought in the complaint.  Here again, however, the assertion does not comport

27 with the reality of the situation. The amount sought by the government in its initial complaint.

28 Thus, as set forth in claimants' motion, the forfeiture of the entire $64,000.00 at issue, the correct

4

1  amount to be considered, would result in a forfeiture 12.8 times greater than the $5,000.00

2  maximum guideline fine.[1]  Using culpability as the "touchstone of the constitutional inquiry" as

3  Bajakajian instructs, such a forfeiture is undoubtedly excessive.

4          Further, the cases cited by the government in support of its argument that the forfeiture

5  sought to be imposed here was not excessive, do not, in reality, support its position.  In United

6  States v. Jose, 499 F.3d 105, 112 (1st Cir. 2007), the Court, in a bulk cash smuggling case, upheld

7  the forfeiture of the entire $114,948.00 which the claimant failed to declare.  However, in

8  addition to the res being all currency, the claimant's explanation for its acquisition – that he had

9  found the money in a trash container outside the hotel in which he was staying Puerto Rico – was

10  clearly not credible.  In another case, the unpublished decision of the district court in United

11  States v. Fifty-nine Thousand Dollars, 2007 WL 824122 (S.D. Fla. 2007), upholding the

12  forfeiture of $49,000 out of $59,000.00 in currency seized, was vacated and overruled by the

13  Eleventh Circuit in United States v. $59,000.00 in United States Currency, 282 Fed. Appx. 785,

14  2008 WL 2485594 (11th Cir. 2008).  In holding that  the district court's analysis in that case was

15  fatally flawed, the court of appeals there held the district court erred in failing to assess the

16  amount of the forfeiture imposed against the maximum authorized guideline fine of $5,000.00,

17  resulting, in that case, in the imposition of a penalty "nearly ten times the maximum suggested by

18  the sentencing guidelines."  Id. at 789-790.

19          Nor does the statement of Justice Kennedy in Bajakajian advocating the use of the

20  statutory maximum rather than the guideline maximum as the benchmark for excessiveness aid

21  the government's position.  (Response, p.7).  The statement was made by Justice Kennedy in his

22  dissenting opinion, and is, therefore, clearly not entitled to any precedential weight.  See,

23  Bajakajian, 524 U.S. at 350.

24          Nevertheless, the government continues to maintain that the applicable statutory fine is

25  relevant to the consideration of an offense's gravity.  Since the maximum statutory fine here is

26  _____

27          [1] Even measuring the maximum guidelines fine against the $32,000 figure the
     government utilizes, this would still result in a fine 6.4 times the guideline maximum. Indeed, in

28  Bajakajian the fine imposed was only 4.2% of the total res, which in this case would translate to
     a fine of $2,688.

**Case 4:07-cv-03691   Document 27   Filed in TXSD on 07/23/09   Page 6 of 8**

1   $250,000.00, the government contends that claimants must prove by a preponderance of the
2   evidence that the forfeiture is grossly disproportional to the gravity of the offense as measured
3   against that maximum statutory amount.  In support of this contention, the government cites
4   another unpublished Eleventh Circuit opinion, <u>United States v. Cekosky</u>, 171 Fed. Appx. 785,
5   788 (11th Cir. 2006).  However, the holding of that case that because the forfeiture at issue was
6   smaller than the statutory maximum, it is was constitutional, was clearly overruled by the
7   subsequent decision of that court in 2008 in <u>United States v. $59,000.00 in United States</u>
8   <u>Currency</u>, <u>supra</u>.  Moreover, the funds at issue in <u>Cekosky</u> consisted of interest which the
9   defendant there had earned on money which he had deposited into bank accounts, which funds
10  were originally derived from identity theft.

11          The other case cited by the government in support of this argument, <u>United States v.</u>
12  <u>Wagoner County Real Estate</u>, 278 F.3d 1091, 1100 (10TH Cir. 2002), is equally unhelpful.
13  Although the Wagoner <u>County Court</u>, citing <u>Bajakajian</u>, did set forth the excerpted language in
14  its opinion(regarding the "guidance" provided by the maximum statutory fine), the court in that
15  case reversed and remanded the issue of the excessiveness of the forfeiture of the claimant's
16  property for the assessment of other relevant factors including "legislative penalties for offenses
17  committed in connection with the property, other related illegal activities, the harm caused by the
18  offenses, the amount of the forfeiture, the benefit to [the claimant], [and] the value of the seized
19  contraband."  <u>Id</u>. at 1102. Thus, this case also supports claimants' position, rather then the
20  government's.
21  / / /
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

**CONCLUSION**

For the foregoing reasons, claimants respectfully submit that the appropriate amount of the forfeiture which ought to be imposed upon them is one which reflects their almost total lack of culpability, and in no case, more than the guideline maximum fine - $5,000.00.

DATED:  July 23, 2009

                                        Respectfully submitted,

                                        /s/ Richard M. Barnett
                                        RICHARD M. BARNETT, ESQ.
                                        Attorney in charge
                                        California Bar #65132
                                        105 West F Street, 4th Floor
                                        San Diego, CA 92101
                                        Telephone: (619) 231-1182
                                        Facsimile: (619) 233-3221
                                        Email: rmb-atty@pacbell.net

                                        Attorney for Claimants
                                        Sant Hoa Mai and Phung Lee

## CERTIFICATE OF SERVICE

I, RICHARD M. BARNETT, do hereby state:

That I am a citizen of the United States, over the age of eighteen years, and not a party to the within action.

That my business address is 105 West F Street, 4th Floor, San Diego, California.

That on July 23, 2009, I have caused service of Claimants' Reply to United States Response in Opposition to Claimants' Motion to Mitigate Forfeiture on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies said party:

1.  Albert Ratliff, Assistant U.S. Attorney, Attorney for Plaintiff.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 23rd day of July, 2009,  at San Diego, California.

s/ Richard M. Barnett
RICHARD M. BARNETT